IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**MOLLY VETETO,**

          Plaintiff,

   v.

**CAROLYN W. COLVIN,**
**Acting Commissioner of the**
**Social Security Administration**,

          Defendant.

No. 6:13-cv-00298-MO

OPINION AND ORDER

**MOSMAN, J.**,

Plaintiff Molly Veteto applied for supplemental security income under Title XVI of the Social Security Act, alleging that she has been disabled since the day of her application. (AR [11-7] at 261.) At a hearing before an ALJ, a vocational expert ("VE") testified about alternative occupations available to Ms. Veteto, in light of her residual functional capacity ("RFC"). (AR [11-3] at 44–56.) The ALJ found that Ms. Veteto had not been under a disability since the date her application was filed, and denied her claim. *Id.* at 26. Ms. Veteto now seeks reversal and remand. (Compl. [1] at 1.) She contends that the VE's testimony was erroneous and could not support a finding that Ms. Veteto is capable of performing other work. Therefore, she argues, the ALJ's decision was not supported by substantial evidence and was based on legal error. *Id.* at 3. Although I find that two of the three alternative occupations included in the ALJ's decision are not supported by substantial evidence, the remaining alternative occupation was supported by

1 – OPINION AND ORDER

substantial evidence and is free of legal error. Therefore, I AFFIRM the denial of supplemental security income.

## BACKGROUND

To determine whether a claimant is disabled, the ALJ applies a five-step sequential process. *See* 20 C.F.R. § 416.920; *Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007). At step one, the ALJ found that Ms. Veteto has not engaged in substantial gainful activity since November 20, 2008, the date of her application. (AR [11-3] at 17.) At step two, the ALJ found that Ms. Veteto has the following severe impairments: "obesity; mild degenerative disc disease of the lumbar spine; mild obstructive sleep apnea; major depressive disorder; posttraumatic stress disorder; dependent personality disorder; [and] possible bone spur/Achilles enthesopathy." *Id.* At step three, the ALJ found that Ms. Veteto does not have an impairment or combination of impairments that meet or medically exceed one of the listed impairments. *Id.* at 18.

Between steps three and four, an ALJ determines a claimant's RFC, which in turn helps determine whether a claimant can perform past relevant work or can make an adjustment to other work. 20 C.F.R. § 416.920(a)(4)(iv)–(v). Here, the ALJ determined that Ms. Veteto can "perform light work with lifting and carrying of 20 pounds occasionally and 10 pounds frequently, standing and walking about six hours of an eight hour workday and sitting for about six hours of an eight hour workday, except she requires a sit/stand option." (AR [11-3] at 20.) Furthermore, "[s]he can occasionally climb ladders, ropes or scaffolds, stoop and crouch and frequently climb ramps and stairs, balance kneel and crawl." *Id.* The ALJ also determined that "[e]xposure to respiratory irritants and hazards should be avoided," and Ms. Veteto is suited to work characterized by "simple, routine tasks and instructions with no more than occasional

public and coworker interaction." *Id.* Ms. Veteto "also requires a predictable work environment with little change and a supervisor who sets goals." *Id.*

At step four, the ALJ found that Ms. Veteto is unable to perform any past relevant work. *Id.* at 25. Finally, at step five, the ALJ relied on the VE's testimony and found that Ms. Veteto can work as an "assembler [of] small products," a "postage machine operator," or as a security guard. *Id.* at 25–26. The ALJ found that because these jobs exist in significant numbers in the national economy and are viable alternatives, Ms. Veteto has not been under a disability since the time her application was filed. *Id.*

Ms. Veteto's only disagreement lies with the ALJ's step five determination. She argues that "her combined impairments are of a severity sufficient to preclude her from performing past work, or other work which exists in significant numbers in the national economy, and that she is, therefore, disabled." (Pl.'s Br. [16] at 6.) She contends that the VE's step five testimony "contradict[ed] information in the Dictionary of Occupational Titles." *Id.* at 7. Ms. Veteto argues that this contradiction makes the VE's testimony erroneous and that consequently, the ALJ's determination was not supported by substantial evidence, requiring reversal and remand. *Id.* at 11.

## STANDARD OF REVIEW

This Court should affirm the Commissioner's final decision if it is based on both substantial evidence and correct legal standards. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). "Substantial evidence" is a deferential standard of review; it "means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (quoting *Derosiers v. Sec'y of*

*Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)).  However, even if the ALJ's

decision contains an error, a court "may not reverse an ALJ's decision on account of an error that

is harmless."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  The party attacking the

decision has the burden of showing that an error is in fact harmful.  *Shinseki v. Sanders*, 556 U.S.

396, 409 (2009).

A claimant bears the burden of proving that they are disabled as defined by the Social

Security Act, except that the burden shifts to the Commissioner at step five of the evaluation.

*Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).  This definition includes both a

medical and a vocational component.  First, a disability requires the inability "to engage in any

substantial gainful activity" because of a medically verifiable physical or mental impairment,

which may result in death or which may be expected to last (or has already lasted) for at least

one year.  42 U.S.C. § 1382c(a)(3)(A).  Second, a claimant will only be considered disabled if

her impairments prevent her from performing her past relevant work, as well as any alternative

substantial gainful activity existing in the national economy, considering the claimant's age,

education, and work experience.  *Id.* § 1382c(a)(3)(B).  Steps four and five of the sequential

evaluation process are designed to answer the vocational component of the disability question.

*See* 20 C.F.R. § 416.920(f)–(g).  An ALJ may rely on the testimony of a VE at step five of the

sequential evaluation. *See* 20 C.F.R. § 416.966(e).  However, reliance on this testimony is only

proper if the ALJ determines whether the testimony conflicts with the Dictionary of

Occupational Titles ("DOT"), and if so, whether there is a reasonable explanation for the

conflict.  *Massachi v. Astrue*, 486 F.3d 1149, 1152–54 (9th Cir. 2007); *see also* SSR 00-4p at

*2, 2000 WL 1898704 (Dec. 4, 2000).  Finally, whenever "there is ambiguous evidence or when

the record is inadequate to allow for proper evaluation of the evidence," an ALJ has a duty to further develop the factual record.  *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).

## DISCUSSION

The VE testified that in light of Ms. Veteto's age, education, past work history, and RFC, she can perform the work of a small products assembler, a postage machine operator, or a security guard.  (AR [11-3] at 51–55.)  Ms. Veteto contends that the VE's testimony regarding each of these job titles contradicted information contained in the DOT, and the ALJ failed to resolve these conflicts.  (Pl.'s Br. [16] at 7, 15.)  Consequently, the ALJ's decision was not supported by substantial evidence.  *Id.*  Essentially, Ms. Veteto argues that all three jobs encompass physical or social demands that exceed the bounds of her RFC.  *Id.* at 11–14.  I will address each job description in turn.

## I.    Small Products Assembler

After hearing testimony that Ms. Veteto could no longer perform her past relevant work, the ALJ asked the VE whether there were any "alternative occupations that might be feasible." (AR [11-3] at 53.)  The VE first identified "small products assembler" as a potential occupation. *Id.*  There are about 50,000 such jobs in the national economy, and about 500 in Oregon.  *Id.* Ms. Veteto argues that this is not a viable occupation in light of the limitations of her RFC, because "small product assemblers are *required* to work as a 'member' of an 'assembly group,' assembling one or two specific parts and then 'passing the unit to another worker.'"  (Pl.'s Br. [16] at 11 (emphasis added) (quoting DOT # 706.684-022).)  Ms. Veteto contends that because her RFC limits her to "no more than occasional public and co-worker interaction," this occupation is not a viable alternative.  *Id.*

The Commissioner argues that Ms. Veteto's objection suffers from two flaws. First, the

DOT description for a small products assembler does not in fact "require" interaction between

coworkers. (Def.'s Br. [18] at 8.) Instead, the DOT states that a small products assembler

"[f]requently works at bench as member of assembly group assembling one or two specific parts

and passing unit to another worker." (Pl.'s Br. [16] at 11 (quoting DOT # 706.684-022).) The

Commissioner argues that this does not mean that a small products assembler will *necessarily*

work in an assembly group, or that working in such a group will require verbal or social

interaction. (Def.'s Br. [18] at 8.) Second, the Commissioner argues that DOT descriptions

describe "maximum requirements of occupations as generally performed," *id.* (quoting SSR 00-

4p at *3, 2000 WL 1898704 (Dec. 4, 2000)), but a VE will "discuss more specific jobs than the

general category of job found in the DOT." *Id.* at 7 (quoting *Moncada v. Chater*, 60 F.3d 521,

524 (9th Cir. 1995)). Here, the ALJ asked the VE to indicate if "there's a difference between the

way jobs are described, either past work or anything, in the DOT versus the way the individual

actually performed them, or the way they're actually performed in your experience." (AR [11-3]

at 44–45.) The VE then testified that Ms. Veteto would be able to perform the job of small

products assembler, and the Commissioner argues that "there [was] no conflict between the DOT

description and the VE testimony that the hypothetical claimant would be able to perform this

occupation." (Def.'s Br. [18] at 8.)

The ALJ's finding that Ms. Veteto could perform the work of a small products assembler

was not based on substantial evidence. *Tommasetti*, 533 F.3d at 1038. Here, the issue is not

whether the VE's testimony and the DOT were in conflict; they were not. The problem is a

potential conflict between the DOT description and Ms. Veteto's RFC, unresolved by the ALJ.

The ALJ first asked the VE to indicate whether "there's a difference between the way jobs are described . . . in the DOT versus the way the individual actually performed them, or the way they're actually performed in your experience." (AR [11-3] at 44–45.) The ALJ asked if there were suitable alternative occupations in light of Ms. Veteto's RFC, and the VE named the job of "assembler, small products, [one]; 706.684-022." *Id.* at 53. This testimony does not conflict with the DOT—indeed, the VE simply repeated the title of the occupation from the DOT. However, an examination of the DOT reveals that the occupational requirements of a small products assembler are ambiguous, and may conflict with Ms. Veteto's RFC. According to the DOT, a small products assembler "[f]requently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker." DOT # 706.684-022 "Assembler, Small Products I," *available at* 1991 WL 679050. This description is ambiguous: does it mean that all assemblers work in a group "frequently" but not all the time; or that "frequently," some assemblers always work while others may never work in a group? Further, the DOT does not fully describe the nature of the interaction between coworkers, which is an important consideration in light of Ms. Veteto's RFC. Ms. Veteto is limited to "occasional public and coworker interaction," due to her affective and anxiety disorders. (AR [11-3] at 23.) It is unclear whether the job of a small products assembler would require more than "occasional . . . coworker interaction." Because the evidence proffered by the VE was ambiguous, the ALJ had a duty to further develop the record. *See Mayes*, 276 F.3d at 459–60. The ALJ did not resolve this ambiguity and any potential conflict between the DOT description and Ms. Veteto's RFC, making the small products assembler finding unsupported by substantial evidence. *Tommasetti*, 533 F.3d at 1038; *Valentine*, 574 F.3d at 690.

**II.      Postage Machine Operator**

The VE also testified that Ms. Veteto can work as a "postage machine operator."  (AR

[11-3] at 53).  There are about 55,000 such jobs in the national economy, and about 500 in

Oregon.  *Id.*  Ms. Veteto contends that this occupation "requires an individual to make

'independent determinations' when turning indicator dials to specified letters and numbers, and

weighing articles to determine required postage, using a scale and postal code book."  (Pl.'s Br.

[16] at 12 (citing DOT # 208.685-026).)  She argues that a job requiring independent

determinations exceeds the limits of Ms. Veteto's RFC, making the VE's testimony contrary to

the ALJ's hypothetical.  *Id.*

The Commissioner argues that a postage machine operator does not make independent

determinations.  (Def.'s Br. [18] at 9.)  First, the DOT description of a postage machine operator

does not list any tasks requiring independent determinations; second, the DOT labels this

occupation as "SVP-2, unskilled."  *Id.*  The Commissioner points out that "[u]nskilled work is

work which needs little or no judgment to do simple duties that can be learned on the job in a

short period of time."  *Id.* (quoting 20 C.F.R. § 416.968(a)).  Therefore, Ms. Veteto can perform

the work of a postage machine operator.  *Id.*

The VE's testimony regarding the occupation of postage machine operator was

appropriate.  Ms. Veteto attempts to complicate the occupation by stating that it requires

independent determinations, but the DOT entry does not support this argument.  The DOT states

that someone in this occupation "[m]ay weigh articles to determine required postage, using scale

and postal code book."  DOT # 208.685-026 "Sealing-and-Canceling-Machine Operator,"

*available at* 1991 WL 671757.  Weighing articles, using a scale, and consulting a code book are

"simple, routine tasks"—tasks called for in the RFC.  (AR [11-3] at 20.)  Further, the DOT labels

this occupation "SVP-2, unskilled," which the Social Security Administration defines as one requiring "little or no judgment." *See* 20 C.F.R. § 416.968(a).  Reading an address and recognizing that a package is bound for Akron instead of Syracuse does not require judgment of the sort that Ms. Veteto is unable to make.  The DOT entry for postage machine operator is not ambiguous, and the ALJ had no duty to further develop the record before making his determination.  *See Mayes*, 276 F.3d at 459–60.  Thus, the ALJ's finding that Ms. Veteto could perform the occupation of postage machine operator was supported by substantial evidence. *Tommasetti*, 533 F.3d at 1038; *Valentine*, 574 F.3d at 690.

### III.    Security Guard

Finally, the VE testified that Ms. Veteto can work as a security guard.  (AR [11-3] at 53.) The VE stated that the DOT lists this occupation as "SVP-3, semiskilled," but the entry was last updated in 1988.  *Id.* at 54 (citing DOT # 372.667-034).  More recent Department of Labor and Oregon Employment Department publications state that security guard training typically takes 30 days or less, which is equivalent to a "SVP-2, unskilled" position.  *Id.*  Furthermore, the VE reduced the number of available jobs in the national and local economies by 50%, to eliminate those security guards who must be on their feet all day or have contact with the public that would exceed the limits of Ms. Veteto's RFC.  *Id.*  After the 50% reduction, there are about 350,000 such jobs in the national economy, and about 2,500 in Oregon.  *Id.*

Ms. Veteto argues that the security guard occupation is inconsistent with the ALJ's hypothetical because "this type of work is the embodiment of unpredictable." (Pl.'s Br. [16] at 12.)  A security guard must "ascertain and guard against any circumstance," "make examinations . . . or determinations regarding circumstances and individuals," and "inspect[] and observ[e]

9 – OPINION AND ORDER

facts and circumstances." *Id.* at 13.  Ms. Veteto contends that the ALJ was "uncertain" about the

VE's testimony, and asked whether this occupation was actually suitable.  *Id.*

The Commissioner argues that the DOT nowhere describes a security guard's job as

"unpredictable," but rather lists a wide range of tasks that a security guard "may" perform.

(Def.'s Br. [18] at 9.)  The VE excluded jobs that require standing or walking for an entire shift,

as well as jobs that require occasional public interaction.  *Id.*  The VE also clarified that he was

"[d]efinitely not" describing an armed and licensed security guard.  (AR [11-3] at 55.)  The

Commissioner argues that many security guards keep watch at video monitors, summoning the

police when necessary  (Def.'s Br. [18] at 9.)  The Commissioner further argues that this type of

job would not require standing or walking for an entire shift, nor would it require public

interaction, making the position a viable alternative in light of Ms. Veteto's RFC.  *Id.*

The ALJ's decision that Ms. Veteto can perform the job of a security guard was not

supported by substantial evidence.  There are security guard duties that Ms. Veteto is unable to

perform, either because they require too much standing or walking, or because they require too

much public interaction.  The VE reduced the number of available jobs to account for these

limitations, and the ALJ clarified that the VE was not describing an armed and licensed guard.

However, the VE's 50% reduction in the number of available jobs appears arbitrary and

unsupported by factual evidence, triggering a duty on the part of the ALJ to further develop the

factual record.  *See Mayes*, 276 F.3d at 459–60.  The ALJ did not make any further inquiry of the

VE that would substantiate the 50% reduction, making the ALJ's security guard finding

unsupported by substantial evidence.

## CONCLUSION

Ms. Veteto only challenges the ALJ's step five determination. Although the ALJ erroneously relied on the VE's testimony regarding the small products assembler and security guard occupations, the ALJ's finding regarding the postage machine operator was supported by substantial evidence. *See Tommasetti*, 533 F.3d at 1038. The ALJ's error was therefore harmless, *see Molina*, 674 F.3d at 1111, because "postage machine operator" is a viable alternative occupation for Ms. Veteto and represents a significant number of jobs in the economy. *See Moncada v. Chater*, 60 F.3d at 524. Therefore, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this __3rd__ day of February, 2014.

/s/ Michael W. Mosman____
MICHAEL W. MOSMAN
United States District Judge